## JOSEPH R. BENFANTE, P.C.
### ATTORNEY AT LAW
225 BROADWAY, SUITE 2700
NEW YORK, NEW YORK 10007
WWW.BENFANTELAW.COM

JOSEPH R. BENFANTE

JON L. NORINSBERG
OF COUNSEL

TELEPHONE: (212) 227-4700

FACSIMILE:  (212) 406-6890

February 9, 2012

<u>VIA ECF & FEDERAL EXPRESS</u>
Honorable John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: United States v. Peter Pace, Jr.
> <u>Docket Number 11 Cr. 26-04 (JG)</u>

Dear Judge Gleeson:

Please accept this letter memorandum submitted on behalf of my client, Peter Pace, Jr., who is scheduled for sentencing before Your Honor, on Friday, February 17, 2012, at 3:00 P.M.

### I.

### RECENT SUPREME COURT DECISION IN GALL V. UNITED STATES

As this Court is well aware, the Supreme Court has recently re-affirmed that the sentencing guidelines are advisory and are not presumed to be reasonable. In <u>Gall v. United States</u>, 2007 WL 4292116 (U.S.), the Supreme Court rejected the notion that a sentence outside the guideline range must be supported by justification that is "proportional to the extent of the difference between the advisory range and the sentence imposed" and must be supported by extraordinary circumstances. See <u>id.</u> at 6.

Rather, the district court should correctly calculate the applicable guidelines range as the "starting point and the initial benchmark." See <u>id.</u> at 7. <u>However, the guidelines are not the only consideration and the district court may not presume that the guideline range is reasonable</u>. See <u>id.</u> After considering the factors listed in 3553(a), the court must make an "individualized assessment based on the facts present." See <u>id.</u> If a non-guideline sentence is appropriate, the extent of the deviation must be explained on the record. See <u>id.</u>

JOSEPH R. BENFANTE

Regardless of whether the sentence imposed is inside or outside the guidelines range, the appellate court must review the sentence under an abuse of discretion standard. See id.

## II.

## INTRODUCTION

Peter Pace has pled guilty pursuant to global Plea Agreement[1] on September 15, 2011. The Plea Agreement pursuant to Rule 11 of the Federal Rules of Criminal Procedure provided among other things that defendant shall plead guilty to Count Two of the Indictment herein.

Count Two of the Indictment charges a violation of 18 U.S.C.S. 1951(a).

### THE PLEA AGREEMENT CALCULATES AN ADJUSTED OFFENSE LEVEL OF 14, CARRYING A RANGE OF IMPRISONMENT OF 18 TO 24 MONTHS

At page 2 of the defendant's plea agreement, the relevant portions relating to the defendant's Guidelines calculation, states as follows:

The Office estimates the likely adjusted offense level under the Guidelines to be level 15, which is predicated on the following Guidelines calculation:

| | |
|---|---|
| Base Offense Level (2B3.2(a)) | 18 |
| Less: Global Adjustment (5K2.0) | -1 |
| Subtotal: | 17 |
| Less: Acceptance of Responsibility (3E1.1(a)) | -2 |
| Total: | 15 |

---

[1] A copy of the Plea Agreement is hereby annexed hereto as Exhibit "A" for the Court's perusal.

JOSEPH R. BENFANTE

At page 3 of the Plea Agreement, the relevant portion relating to defendant's calculation reads as follows:

> "If the defendant pleads guilty on or before September 15, 2011 the government will move the Court, pursuant to U.S.S.G. §3E1.1(b), for an additional one-level reduction, resulting in an adjusted offense level of 14. This level carries a range of imprisonment of 18 to 24 months assuming that the defendant will be sentenced within Criminal History Category II."

The defendant did in fact plead guilty on September 15, 2011 and therefore stands before the Court at sentencing with an adjusted offense level of 18 to 24 months.

### III.

**THE PLEA AGREEMENT AND THE PRESENTENCE INVESTIGATION REPORT ARE NOT IN AGREEMENT WITH REGARD TO THE GUIDELINE CALCULATION**

On September 15, 2011, Peter Pace, Jr., appeared before Your Honor and entered a plea of guilty to Count Two of a five-count Indictment, in accordance with his Plea Agreement.

The Plea Agreement calculated an adjusted offense level of 14, Criminal History Category II; carrying a range of from 18 to 24 months. A copy of Peter Pace, Jr.'s Plea Agreement is hereby annexed hereto and marked Exhibit "A" for the Court's perusal.

Pages 8 and 9, paragraphs 22 through 30 of the Department of Probations PSI Report, dated December 14, 2011, indicates a Total Offense Level of 17, not 14.

The Three-level difference turns on the issues of "implied threat" (Two-levels) and global resolution (One-level).

In reference to the "implied threat" enhancement, as depicted in the PSI Report at pages 8 and 9, paragraphs 22 through 30; the Government in its response to defendant's "objections" to the PSI Report and dated January 5, 2012 states at pages 2 and 3 that:

> ". . . .the government does not intend to present evidence or otherwise argue at sentencing in support of a Two-level Guidelines enhancement for implied threat of bodily injury. While the Government does not dispute the potential applicability of that enhancement in light of the facts and circumstances of this case, the Government stands by the Guidelines estimate set forth in the plea agreement." (Emphasis supplied).

3

JOSEPH R. BENFANTE

## AS STATED IN THE DEPARTMENT OF PROBATION'S PSI REPORT, THERE IS NO INDICATION THAT EITHER JOHN DOE #1 OR HIS BUSINESS SUFFERED AT ALL FROM THE EXTORTION BY PACE AND CILENTI

John Doe #1 (Steve Marcus) was a trucking business owner, who <u>solicited</u> business from Daniel Cilenti and Peter Pace.

At page 6, paragraph 13 of the PSI Report, Probation Officer Roberta Houlton writes:

"The loss determination involved in the extortion of John Doe #1 revolves solely around the amount of payments made by John Doe #1 to Pace and Cilenti. <u>As the work brought to Joe Doe #1 by Pace is work that would not have otherwise been afforded him, the amount of money obtained from this work does not factor into the loss determination. Further there is no indication that either Joe Doe #1 or his business suffered at all from the extortion by Pace and Cilenti.</u>" (Emphasis supplied)

### IV.

### PERSONAL BACKGROUND AND FAMILY HISTORY OF PETER PACE, JR.

It is respectfully requested that this Court consider, in accordance with 18 USC §3553(a), Peter Pace, Jr.'s history and characteristics, which is outlined below, when determining an appropriate sentence.

Peter Pace, Jr., is currently 51 years of age born on January 31, 1961, in Tarrytown, New York, to Peter Pace, Sr., and Marie (nee Vitro) Pace. The defendant has two sisters, Pamela Berlingo, age 52, and Patrice Pace, age 47.

Peter is married and together he and his wife Yolanda have produced two sons. Peter Emmanuel Pace is single and 22 years old. He attended Rennesslear Polytechnic Institute, where he graduated from, and is currently employed as a project manager for a construction company on Long Island. Their younger son, Justin Pace, is 16 years old and is in the tenth grade at Carmel High School in Patterson, New York. Both sons live at home with their parents.

In addition to Peter's two biological sons, he also has a stepson who shares his last name, Gene Michael Pace. Peter has raised Gene Michael since the age of 2, and he is currently a 28 year old married man with two children of his own. He and his family share a very close bond with Peter Pace.

4

JOSEPH R. BENFANTE

Peter's sister Pamela (age 51) resides in Tarrytown, New York, and is the mother of three children. She is employed by Toyota in their accounting department. His other sister Patrice (age 46) is the mother of two children. Patrice works for a construction company as a project manager. Mr. Pace maintains a close relationship with both his sisters and their respective children.

Mr. Pace's parents, Peter, Sr. and Marie Pace reside in Mesa, Arizona. They moved to Arizona approximately five years ago, and are both aware of their son's conviction. Peter's father suffers from high blood pressure and is a retired construction manager. His mother also suffers from high blood pressure, and was diagnosed with chronic obstructive pulmonary disease also referred to as "COPD."

Peter and his sisters were raised in a middle-class household, void of any financial stress. His parents relocated to Arizona due to their respective illnesses, but maintain an extreme closeness to Peter, his sisters and all of the grandchildren. Peter's mother worries constantly that his family is suffering from this situation, and is deeply concerned for her grandson Justin, Peter's youngest son who has taken his father's arrest very hard.

V.

**PETER PACE HAS THROUGHOUT HIS ENTIRE LIFE, SOUGHT OUT AND ACHIEVED GAINFUL EMPLOYMENT**

Peter Pace has distinguished himself in relation to his exceptional work ethic.

As a young man of 18 years of age, Peter Pace graduated from Mamaroneck High School in Mamaroneck, and immediately obtained employment as a general laborer with his father's company; Peter Pace and Associates. There he worked for almost one year, before obtaining new employment with an outside company.

In or about the early 1980s, Peter took what he learned from working in the family business, and secured a higher paying position as a construction foreman with Felix Industries located in the Bronx. He remained steadfastly employed by Felix Industries for a period of almost nine years.

Thereafter in 1989 and for the next sixteen years, Peter was employed as a Senior Project Operations Manager with Danella Construction, whose headquarters were located in Plymouth, Pennsylvania. During this time, in 2003, Peter became licensed as a machine operator and gained membership in the union, Local 15 – Operating Engineers of New York City with offices at Lefferts Boulevard in Queens. He left his employment with Danella Construction in 2005 to start his own business, Qualcom Construction, located in Bronx, New York.

JOSEPH R. BENFANTE

From 2005 to January 2011, Peter Pace owned and operated his own company Qualcom Construction. He was the principal of said company until his arrest, upon which he relinquished his interest in same.

Six months later, in or about June of 2011, Peter began working as a water main contractor with "Halcyon Construction" in Pleasantville, New York, where he remains to date.

As can be gleaned from the above stated work history, Peter Pace's extraordinary employment record of thirty-two years is significant in showing that he has been gainfully employed his entire adult life.

## VI.

**PETER PACE'S DEVOTION AND INVOLVEMENT WITH VARIOUS CHARITABLE CAUSES THROUGHOUT HIS LIFE AND PRIOR TO THE INSTANT OFFENSE; AND HIS SIGNIFICANT VOLUNTEER WORK IN 2001 DURING THE WORLD TRADE CENTER DISASTER, IS EXEMPLARY AND NOTEWORTHY**

An example of Peter Pace's charitable nature is exemplified through his outstanding and altruistic volunteer work at Peter's local Parish.

Father Anthony Sorgie, Pastor of the St. James the Apostle Roman Catholic Church of Carmel, New York, writes as follows:

> Dear Judge Gleeson:
>
> I wish to offer this letter as a Pastor and friend of Mr. Peter Pace. Peter has been my parishioner since 2004, which are the years I have been, Pastor at St. James the Apostle Parish in Carmel, New York. I want to thank you for giving permission for Peter to attend Mass on Sundays at 5:30 PM with his wife and children. He has been a worshiping member of the parish for all these years.
>
> Shortly after I became Pastor of St. James in July 2004, I began to prepare a permanent memorial to the Victims of 9/11 and Peter was instrumental in helping us with the work. He is an exemplary worker. He and his family volunteer easily and with no fanfare. They have been an enormous asset to our Parish family. Peter and his family have often been attentive to many of the volunteer needs in our Parish.

## JOSEPH R. BENFANTE

As a son, father, husband, and grandson, I have watched the attentiveness with which Peter socializes and cares for his family.

It is healthy and clearly, a central hallmark of his life. He has worked easily with many of our parishioners and the family nature of Peter flows obviously to others, friends and co-workers.

I am very much aware of the difficulties that Peter has encountered and the consequences. I pray that justice with mercy be extended to Peter.

If you wish to contact me directly, all of my information is listed above and I am available to expand on anything I have written or that you wish to ask. (Emphasis supplied)

Respectfully,

Father Anthony Sorgie
Pastor


Father Anthony Sorgie's letter is annexed hereto and marked Exhibit "B" for the Court's perusal.

Peter's wife Yolanda Pace, references Peter's altruism within and for the benefit of his community, having taken place many years prior to the instant case.

Yolanda Pace's letter reads as follows:

My name is Yolanda Pace. I have known Peter V Pace Jr. since 1988. I was a young woman with a very big burden. My mother was addicted to drugs. With all odds against me, for I also had a son who was born in 1983. Peter and I engaged in a loving relationship and he accepted me with all of the challenges I brought into our lives.

He helped me during the tough times I faced as a single mother. He immediately embraced Gene my son and later on gave him his last name. Peter has been a great father. He's the best provider, husband, son, brother, father and grandfather I know. <u>Peter has also been very helpful to the community. For the past eight years we have cooked as a family on Thanksgiving at the St. John's New</u>

JOSEPH R. BENFANTE

Milford (Church) [sic], 7 Whittlesey Avenue, New Milford, Ct. 06776, to feed the less fortunate.  It brings us joy to do so.

When 9-11 happened he packed his bag and went to the trade center to offer his help without a second thought. When our church needed help to build a memorial for 9-11 for all the folks lost in our community he volunteered his time alongside his three sons and anyone he could recruit. The end result is a beautiful memorial for which he should be proud off.

Since he's been in my life he has made me a better person with his constant positive reinforcement. Since January 20, 2011 our lives have taken a horrible turn. The fact that he's incarcerated in our home has been very difficult to adjust to. The courts felt he is a risk I promise you he never was….He's a family man that made a big mistake, even though he's guilty I beg you to take into consideration all of his fine qualities and be merciful for this is not just about punishing one man but it will affect a whole family it already has….. It has nearly destroyed our lives, but his strengths kindness and care have kept us together. I hope that his poor judgment won't ruin whatever life you allow us to have. (Emphasis supplied)

With much Respect,

Yolanda Pace

This letter written by Yolanda Pace, Peter's wife is hereby annexed hereto as Exhibit "C" for the Court's perusal.

### PETER'S EXTRAORDINARY EFFORTS DURING THE WTC CRISIS DISTINGUISH HIM BEYOND MEASURE

The fact of the matter is that immediately following the World Trade Center collapse, Peter Pace worked tirelessly at the WTC site, in an effort to recover any bodies or survivors.  For the first two weeks, Peter Pace slept at St. Paul's Church located on Broadway and at a nearby firehouse with little or no sleep.

All and all Peter Pace sacrificed his safety and health full time for a period of approximately four months!

8

JOSEPH R. BENFANTE

Peter Pace's niece Elizabeth Berlingo of Mamaroneck sheds further light on Peter Pace's selfless kindness to his community in time of need.

Elizabeth's letter to Your Honor does justice to Peter's sacrifice to help those in need. She writes:

> Your Honor:
>
> Last January 2011, I was tragically devastated over hearing that my uncle, Peter Pace Jr., was linked to the involvement of a life-changing public event I thought to myself that there was clearly some confusion over the actions of my uncle.
>
> I cannot stress enough that my uncle is by far the hardest working person I know. He has forever remained driven and never given up on his ambitions. Whether it's waking up at 4am to drive an hour to work or making sure his wife and three sons are taken care of, he has always come second to everything else in his life.
>
> Although many would agree that he appears tough on the outside, he is soft as butter on the inside. He is the true definition of what a husband, father, grandfather, and brother stands for. My uncle is very admirable when it comes to raising a happy and healthy family, along with giving back to his community. Over the years, he has consistently been involved in his church and willingly helped out in the soup kitchen on Thanksgiving day. Everything he does, comes from his heart.
>
> My uncle is the only person I know that has been able to keep memorable relationships with childhood friends. Everyone I have ever met that knows who my uncle is has nothing but positive things to say about him. Right after the tragic event of 911 occurred, he made it his responsibility to be down at the World Trade Center lending a helping hand. It makes me very proud to say that Peter Pace Jr. is my uncle.

JOSEPH R. BENFANTE

> When it comes to my uncle, he will always hold a special place in my heart. What I admire most about him is that he is true to himself. If I said life would be the same without him, I'd be lying. He is the rock that holds his family together and keeps them from falling apart. The world would be a better place with more people like my uncle. (Emphasis supplied)
>
> Sincerely,
>
> Elizabeth Berlingo

The original letter of Elizabeth Berlingo is annexed hereto and marked Exhibit "D."

## VII.

### PETER PACE'S WORK WITH "HABITAT FOR HUMANITY," AN ORGANIZATION WHOSE AIM IS TO REBUILD POOR PEOPLE'S HOMES THAT WERE DESTROYED BY FIRE OR OTHER DISASTERS

In the years 2005, 2006 and 2007, Peter Pace gave of his weekends without remuneration to work rebuilding burned out homes for less fortunate people in Yonkers, Rye and White Plains.

Peter would replace sheetrock personally and remove debris and rebuild all facets of construction necessary for each project, without pay.

Joseph K. Sciacca of New Milford, Connecticut, writes as follows:

> To Honorable Judge Gleeson:
>
> My name is Joseph Sciacca, I have been friends with Peter Pace for over 30 years.
>
> I was proud to be a first responder with him at the World Trade Center. I watched him work tirelessly with FEMA while there was still hope of survivors.
>
> He has also worked for Habitat for Humanity on weekends for years. I have also volunteered with him at Thanksgiving feeding the less fortunate in various towns. He has also erected a 911 Memorial at his own church.

## JOSEPH R. BENFANTE

> Sometimes people make poor choices and mistakes in life for which they are forgiven. I am proud to call him my friend
>
> Please take these facts into consideration as a reference to his character.
>
> Thank you for your time.
>
> Sincerely,
>
> Joseph Sciacca

Annexed hereto as Exhibit "E" is Joseph K. Sciacca's letter to the Court.

Peter Pace's present employer James Pellizzi, a Field Supervisor for Halcyon Construction writes as to Peter's extraordinary work ethic and altruism as follows:

> Dear Honorable John Gleeson,
>
> My name is James Pellizzi. I am a field supervisor for Halcyon Construction. I was introduced to Peter Pace approximately three months ago. He was struggling to support his family. We chatted and I was told by Peter of the situation with his upcoming trial. I was able to help him by giving him much needed work, which still to this day he works for Halcyon when needed.
>
> Peter has been very dependable, his work ethic and knowledge of construction is appreciated. As the weeks past I was able to talk more to him and was able to get to know the giving side of Peter. He told me about some charity work he had done. At that point I told Peter I run a Lung Cancer event in November due to losing my mother-in-law to this disease 6 years ago. I asked him if he could help and maybe attend the event. Unfortunately he was unable to attend the event, but he did manage to help out tremendously in other ways. He reached out to his friends and companies to donate to this event, which was very successful. With his help managing to get prizes we raised over $13,000.00.

JOSEPH R. BENFANTE

> Peter is a caring, loving family man who deserves another chance. Taking him away you would lose a loyal giving and supportive man to his family friends and his community. I hope the court can find mercy on him and see that Peter has a good heart and will make the court proud given another chance.
>
> Sincerely,
>
> James Pellizzi
> Field Supervisor

Attached hereto and marked as Exhibit "F" is the letter of Peter Pace's employer James Pellizzi.

## VIII.

### ATTESTATIONS OF DEFENDANT'S CHARACTER

Attached hereto collectively and marked Exhibit "G" are numerous letters submitted on behalf of Peter Pace attesting to his basic decency, to them, his family, neighbors and friends. These insightful letters captures the sincerity, integrity and finer qualities which Peter Pace is endowed with; and which express insights into his character for your consideration.

## IX.

### CONCLUSION

Pursuant to the factors enumerated in Title 18 USC §3553(a), United States v. Booker, 543 U.S. 220; United States v. Crosby, 397 F.3d 103, (2nd Cir. 2005) and Gall v. United States, 2007 WL 4292116 (U.S.) – defense counsel most respectfully asks the Court, to impose a sentence at the low end of the Guidelines as depicted and calculated in defendant's Plea Agreement, to wit: 18 months.

This sentence is in conformity with a Level 14 Criminal History Category II as presented in the Plea Agreement herein.

In doing so, it is respectfully asserted that a guideline sentence of 18 months will be in accordance with Peter Pace's prior good deeds, altruistic character and extraordinary distinguished employment record.

JOSEPH R. BENFANTE

Accordingly, the sentence will be "sufficient but no greater than necessary" to fulfill the ends of justice herein.

Respectfully submitted,

JOSEPH R. BENFANTE

JRB:jb
Enclosures

cc: Stephen E. Frank, Esq.
    Assistant United States Attorney (Via ECF)

    All Counsel (Via ECF)

EXHIBIT "A"

AB:SEF
F.#2011R00013

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA                    PLEA AGREEMENT

    - against -                             11 CR 0026 (JG)

PETER PACE, JR.,

            Defendant.

- - - - - - - - - - - - - - - - - -X

        Pursuant to Rule 11 of the Federal Rules of Criminal
Procedure, the United States Attorney's Office for the Eastern
District of New York (the "Office") and PETER PACE, JR. (the
"defendant") agree to the following:

        1.    The defendant will plead guilty to Count Two of the
above-captioned indictment, charging a violation of 18 U.S.C. §
1951(a). The count carries the following statutory penalties:

            a.  Maximum term of imprisonment: 20 years
                (18 U.S.C. § 1951(a)).

            b.  Minimum term of imprisonment: 0 years
                (18 U.S.C. § 1951(a)).

            c.  Maximum supervised release term: 3 years, to
                follow any term of imprisonment; if a
                condition of release is violated, the
                defendant may be sentenced to up to 2 years
                without credit for pre-release imprisonment or
                time previously served on post-release
                supervision
                (18 U.S.C. § 3583(b) & (e)).

            d.  Maximum fine: $250,000 or twice the gross gain
                or loss
                (18 U.S.C. §§ 3571(b), (d))

2

e.   $100 special assessment
     (18 U.S.C. § 3013).

f.   Restitution: to be determined by the Court
     (18 U.S.C. §§ 3663, 3663A).

g.   Forfeiture: to be determined by the Court
     (18 U.S.C. § 981; 28 U.S.C. § 2461; 21 U.S.C.
     § 853(p)).

2.   The defendant understands that although imposition of a sentence in accordance with the United States Sentencing Guidelines (the "Guidelines") is not mandatory, the Guidelines are advisory and the Court is required to consider any applicable Guidelines provisions as well as other factors enumerated in 18 U.S.C. § 3553(a) to arrive at an appropriate sentence in this case. The Office will advise the Court and the Probation Department of information relevant to sentencing, including criminal activity engaged in by the defendant, and such information may be used by the Court in determining the defendant's sentence. The Office estimates the likely adjusted offense level under the Guidelines to be level 15, which is predicated on the following Guidelines calculation:

| | |
|---|---|
| Base Offense Level (2B3.2(a)) | 18 |
| Less: Global Adjustment (5K2.0) | −1 |
| Subtotal: | 17 |
| Less: Acceptance of Responsibility (3E1.1(a)) | −2 |
| Total: | 15 |

3

This level carries a range of imprisonment of 21 to 27 months, assuming that the defendant will be sentenced within Criminal History Category II. If the defendant pleads guilty on or before September 15, 2011, the government will move the Court, pursuant to U.S.S.G. § 3E1.1(b), for an additional one-level reduction, resulting in an adjusted offense level of 14. This level carries a range of imprisonment of 18 to 24 months, assuming that the defendant will be sentenced within Criminal History Category II.

3.    The Guidelines estimate set forth in paragraph 2 is not binding on the Office, the Probation Department or the Court. If the Guidelines offense level advocated by the Office, or determined by the Probation Department or the Court, is, for any reason, including an error in the estimate, different from the estimate, the defendant will not be entitled to withdraw the plea and the government will not be deemed to have breached this agreement. If the Guidelines calculation of the Court is different from the Guidelines estimate set forth in paragraph 2, the defendant will not be entitled to withdraw the guilty plea.

4.    The defendant agrees not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 27 months or below. This waiver is binding without regard to the sentencing analysis used by the Court. The defendant waives all defenses based on the

statute of limitations and venue with respect to any prosecution

that is not time-barred on the date that this agreement is signed

in the event that (a) the defendant's conviction is later vacated

for any reason, (b) the defendant violates this agreement, or

(c) the defendant's plea is later withdrawn. The defendant waives

any right to additional disclosure from the government in

connection with the guilty plea. The defendant agrees that with

respect to all charges referred to in paragraphs 1 and 5(a) he is

not a "prevailing party" within the meaning of the "Hyde

Amendment," 18 U.S.C. § 3006A note, and will not file any claim

under that law. The defendant agrees to pay the special assessment

by check payable to the Clerk of the Court at or before sentencing.

     5.   The Office agrees that:

        a.   no further criminal charges will be brought against the defendant for his participation in (1) conspiring to extort and extorting John Doe #1 in or about and between May 2007 and February 2010, as alleged in Racketeering Act One and Counts Two and Three of the indictment; and (2) conspiring to extort and extorting John Doe #2 in or about and between September 2009 and February 2010, as alleged in Racketeering Act Two and Counts Four and Five of the indictment, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 et seq., and at the time of sentence, it will move to dismiss the remaining counts of the indictment with prejudice;

and, based upon information now known to the Office, it will

        b.     take no position concerning where within the Guidelines range determined by the Court the sentence should fall; and

        c.     make no motion for an upward departure under the Sentencing Guidelines.

If information relevant to sentencing, as determined by the Office, becomes known to the Office after the date of this agreement, the Office will not be bound by paragraphs 5(b) and 5(c). Should it be judged by the Office that the defendant has violated any provision of this agreement, the defendant will not be released from his plea of guilty but this Office will be released from its obligations under this agreement, including but not limited to (a) moving for the additional one-level downward adjustment for timely acceptance of responsibility described in paragraph 2 above, and (b) the provisions of paragraph 5(a)-(c).

        6.     This agreement does not bind any federal, state, or local prosecuting authority other than the Office, and does not prohibit the Office from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the defendant.

        7.     This agreement is conditioned upon the following: (a) the defendants listed below (the "covered defendants") entering pleas on or before October 7, 2011; and (b) acceptance of those

6

pleas by a United States District Court Judge at the time of the plea allocution. The covered defendants are:

       (i) Dominic Caramanica;
      (ii) Daniel Cilenti; and
     (iii) Glenn Mazzella;

If fewer than all the covered defendants satisfy conditions 7(a) and 7(b), or if any of the covered defendants subsequently seeks to withdraw his guilty plea, the Office, in its sole discretion, may elect to void any or all of the covered defendants' plea agreements and proceed to trial. The Office may also elect not to recommend a reduction under the Guidelines for a global disposition. No covered defendant will have the right to withdraw his guilty plea in any of those circumstances.

       8.   No promises, agreements or conditions have been entered into by the parties other than those set forth in this agreement and none will be entered into unless memorialized in writing and signed by all parties. This agreement supersedes all

7

prior promises, agreements or conditions between the parties. To become effective, this agreement must be signed by all signatories listed below.

Dated:     Brooklyn, New York
           Sept. 15,    , 2011

                              LORETTA E. LYNCH
                              United States Attorney
                              Eastern District of New York

                    By:     _____
                              Stephen E. Frank
                              Assistant United States Attorney

                    Approved by:

                              James Miskiewicz
                              Supervising Assistant U.S. Attorney

I have read the entire agreement and discussed it with my attorney.
I understand all of its terms and am entering into it knowingly and
voluntarily.

_____
PETER PACE, JR.
Defendant

Approved by:

_____
Joseph Benfante, Esq.
Counsel to Defendant

EXHIBIT "B"

**Rev. Dr. Anthony Sorgie**
**St. James the Apostle Roman Catholic Church**
**14 Gleneida Avenue**
**Carmel, New York 10512**
**1-845-225-2079**
**Asorgie@AOL.com**

Honorable John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

January 31, 2012

Dear Judge Gleeson,

I wish to offer this letter as a Pastor and friend of Mr. Peter Pace. Peter has been my parishioner since 2004, which are the years I have been, Pastor at St. James the Apostle Parish in Carmel, New York. I want to thank you for giving permission for Peter to attend Mass on Sundays at 5:30 PM with his wife and children. He has been a worshiping member of the parish for all these years.

Shortly after I became Pastor of St. James in July 2004, I began to prepare a permanent memorial to the Victims of 9/11 and Peter was instrumental in helping us with the work. He is an exemplary worker. He and his family volunteer easily and with no fanfare. They have been an enormous asset to our Parish family. Peter and his family have often been attentive to many of the volunteer needs in our Parish.

As a son, father, husband, and grandson, I have watched the attentiveness with which Peter socializes and cares for his family. It is healthy and clearly, a central hallmark of his life. He has worked easily with many of our parishioners and the family nature of Peter flows obviously to others, friends and co-workers.

I am very much aware of the difficulties that Peter has encountered and the consequences. I pray that justice with mercy be extended to Peter.

If you wish to contact me directly, all of my information is listed above and I am available to expand on anything I have written or that you wish to ask.

Respectfully,

Father Anthony Sorgie
Pastor

EXHIBIT "C"

Honorable John Gleeson

United States District Judge

Eastern District of New York

225 Cadman Plaza East

Brooklyn, New York 11201

My name is Yolanda Pace. I have known Peter V Pace Jr. since 1988. I was a young woman with a very big burden. My mother was addicted to drugs. With all odds against me, for I also had a son who was born in 1983. Peter and I engaged in a loving relationship and he accepted me with all of the challenges I brought into our lives.

He helped me during the tough times I faced as a single mother. He immediately embraced Gene my son and later on gave him his last name. Peter has been a great father. He's the best provider, husband, son, brother, father and grandfather I know. Peter has also been very helpful to the community. For the past eight years we have cooked as a family on thanksgiving at the St. John's New Milford, 7 Whittlesey Avenue, New Milford, CT 06776, to feed the less fortunate. It brings us joy to do so.

When 9-11 happened he packed his bag and went to the trade center to offer his help without a second thought. When our church needed help to build a memorial for 9-11 for all the folks lost in our community he volunteered his time alongside his three sons and anyone he could recruit. The end result is a beautiful memorial for which he should be proud off.

Since he's been in my life he has made me a better person with his constant positive reinforcement. Since January 20, 2011 our lives have taken a horrible turn. The fact that he's incarcerated in our home has been very difficult to adjust to. The courts felt he is a risk I promise you he never was....He's a family man that made a big mistake, even though he's guilty I beg you to take into consideration all of his fine qualities and be merciful for this is not just about punishing one man but it will affect a whole family it already has..... It has nearly destroyed our lives, but his strengths kindness and care have kept us together. I hope that his poor judgment won't ruin whatever life you allow us to have.

With much Respect;

Yolanda Pace

EXHIBIT "D"

Elizabeth Berlingo
525 Rockland Ave
Mamaroneck, N.Y. 10543

Honorable John Gleeson                                                    January 1, 2012
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Your Honor:

Last January 2011, I was tragically devastated over hearing that my uncle, Peter Pace Jr., was linked to the involvement of a life-changing public event. I thought to myself that there was clearly some confusion over the actions of my uncle.

I cannot stress enough that my uncle is by far the hardest working person I know. He has forever remained driven and never given up on his ambitions. Whether it's waking up at 4am to drive an hour to work or making sure his wife and three sons are taken care of, he has always come second to everything else in his life.

Although many would agree that he appears tough on the outside, he is soft as butter on the inside. He is the true definition of what a husband, father, grandfather, and brother stands for. My uncle is very admirable when it comes to raising a happy and healthy family, along with giving back to his community. Over the years, he has consistently been involved in his church and willingly helped out in the soup kitchen on Thanksgiving day. Everything he does, comes from his heart.

My uncle is the only person I know that has been able to keep memorable relationships with childhood friends. Everyone I have ever met that knows who my uncle is has nothing but positive things to say about him. Right after the tragic event of 911 occurred, he made it his responsibility to be down at the World Trade Center lending a helping hand. It makes me very proud to say that Peter Pace Jr. is my uncle.

When it comes to my uncle, he will always hold a special place in my heart.  What I admire most about him is that he is true to himself.  If I said life would be the same without him, I'd be lying.  He is the rock that holds his family together and keeps them from falling apart.  The world would be a better place with more people like my uncle.

Sincerely,

Elizabeth Berlingo

EXHIBIT "E"

Joseph K. Sciacca
11 Twin Ridge Road
New Milford, CT 06776

*November 7, 2011*

*To Honorable Judge Gleeson:*

*Dear Sir,*

*My name is Joseph Sciacca. I have been friends with Peter Pace for over 30 years.*

*I was proud to be a first responder with him at the World Trade Center. I watched him work tirelessly with FEMA while there was still hope of survivors.*

*He has also worked for Habitat for Humanity on weekends for years. I have also volunteered with him at Thanksgiving feeding the less fortunate in various towns. He has also erected a 911 Memorial at his own church.*

*Sometimes people make poor choices and mistakes in life for which they are forgiven. I am proud to call him my friend.*

*Please take these facts into consideration as a reference to his character.*

*Thank you for your time.*

*Sincerely,*

*Joseph Sciacca*

EXHIBIT "F"

November 07,2011

Honorable John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Dear Honorable John Gleeson,

My name is James Pellizzi. I am a field supervisor for Halcyon Construction. I was introduced to Peter Pace approximately three months ago. He was struggling to support his family. We chatted and I was told by Peter of the situation with his up coming trail. I was able to help him by giving him much needed work ,which still to this day he works for Halcyon when needed.

Peter has been very dependable,  his work ethic and  knowledge of construction is appreciated. As the weeks past I was able to talk more to him and was able to get to know the giving side of Peter. He told me about some charity work he had done. At that point I told Peter I run a Lung Cancer event in November due to losing my mother-in-law to this disease 6 years ago. I asked him if he could help and maybe attend the event. Unfortunately he was unable to attend the event, but he did manage to help out tremendously in other ways. He reached out to his friends and companies to donate to this event, which was very successful. With  his help managing to get prizes we raised over $13,000.00.

Peter is a caring, loving family man who deserves another chance. Taking him away you would lose a loyal giving and supportive man to his family friends and his community. I hope the court can find mercy on him and see that Peter has a good heart and will make the court proud given another chance.

Sincerely,  James Pellizzi

James Pellizzi
Field Supervisor

EXHIBIT "G"

*Peter & Marie Pace*
*1544 No. Rico Circle*
*Mesa, Arizona*
*85213*

Honorable John Gleeson                                    December 14, 2011
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Your Honorable Judge Gleeson:

My name is Marie Pace. My husband and I are writing you to tell you about our relationship with
our son Peter.

Our son Peter has always been a very strong component in our family. He has always been there for
my husband and myself throughout his 51 years. How can I ever express a lifetime of support and
love in just one letter?

With that said, I can only express with gratitude all of the respect, and love that Peter has shown to
us, and our extended family.

When my husband and I retired to Arizona, we could always count on the fact no matter what Peter
always made sure that his 101-year-old grandfather had everything that he needed. Because he lives
alone in Mamaroneck we never worried, he always made sure that in case of emergency the driveway
was cleared of snow, and the house was always warm.

Peter was always there for all of his family no matter what the situation. From plumbing to just
needing a hand.

We as grandparents are very proud of the job that he and his wife are doing with their three sons. We
are very proud of the fact that their middle son Peter has recently graduated from Renesslear College.

We were very proud of the willingness Peter showed when he was employed as an operating engineer
to the tragedy the occurred at the World Trade Center in 2001. He and his crew worked tirelessly thru
that tragedy.

He has always looked after his two sisters. He has always been there for them, and their family. His
talents and hard work has shown in the home he has built for his family, the hard work he offered to
his friends, and his community.

We hope that this letter has brought some light to the true feeling that we have for our son, and his place in our family.

Sincerely,

Peter & Marie Pace

Pamela V. Berlingo
8 Sylvan Place
New Rochelle, New York10801

January 09, 2012

Honorable John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York11201

Dear Honorable Gleeson,

My name is Pamela V Berlingo; I am the Head of the Accounts Receivable Department for the
DCH Auto Group.  I have known Peter V Pace Jr. all of my fifty-two years, and I am his eldest
sister. My brother has always been my rock, I have been a single mother of three since 1996, and
he has been a father figure for my two boys who are now the age of 23 and 26. I have never had
any trouble with them growing up; they are both hard working gentlemen thanks in large part to
his teaching.

My daughter Elizabeth will be getting married this September, she will be the first in the family
to walk down the aisle. I humbly ask your Honor to have mercy on him. It would mean the world
to all of us that he is with his family.

Peter is a total family man. A husband, dad, and now grandpa. I love my brother very much; he
is my support, he has always been there for me and my children. I don't know too many guys that
would replace my hot water tank on Super Bowl Sunday back in 2007 when the NY Giants were
playing. Coming from a NY Giants household, that means a lot, but he did, and would not take a
dime from me. That will forever be in my heart.

We are a very close hardworking family and I would love to see my brother put his life back
together as soon as possible for the happiness of his wife, children, and grandchildren.

Very truly yours,

Pamela V. Berlingo

Patrice Pace
78 Gold Road
Wappingers Falls, New York
12590

Honorable John Gleeson                                    December 20, 2011
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Your Honor:

Peter Pace Jr. is my only brother. Over the years Peter and myself have shared
the true meaning of what it means to be brother and sister.

From the time we were children, Peter and I have shared a bond that holds true
till this very day. My fondest childhood memories somehow, someway always
revolve around my brother Peter.

As an adult, I have had the unique opportunity to work side by side with my
brother.

Peter is one the hardest working men that I know. It would be a very abnormal
day to see my brother at the end of a workday without muddy boots, and heavily
soiled jeans. His hair would be heavy clouded with street dust, but he would have
a smile on his face. A hard day of work for him always personified a sense of
happiness and contentment.

I admire my brother for all of his hard work, and I'm very grateful to be able to
share in our beautiful family. He and his wife Yolanda have done such an
amazing job in raising my three nephews, and together they have built a beautiful
live for themselves, their sons, and their grandchildren.

I love my brother with all of my heart, and if this world had more true, and
generous people my brother Peter, then this world would indeed be the best
place to be.

Thank you for taking your time and allowing the opportunity to express my love
for my brother Peter.

Sincerely,

Patrice Pace

**Maria Difolco**
**45 Hillside Rd**
**Larchmont, New York, 10538**

December 26, 2011

Honorable John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Dear Judge Gleeson,

My name is Maria DiFolco and I have known Peter Pace my whole life. Our mothers' are sisters and we grew up together in Mamaroneck, New York.

I am aware that Peter has been convicted of criminal charges and personally, it has made me very sad. It was difficult to reconcile his mistake with who he is as a person of love, integrity and character.

Peter has always maintained his very close familial connection. Whether planting our 101 year old Grandfather's family garden every spring or personally tending to repairs at our Grandfather's home, the one that Peter grew up in, he has always been available to offer his talents and time. He has personally contributed to our annual family reunion and birthday celebration for Grandpa. He is a devoted husband, father, grandfather, brother, son and grandson.

About five years ago, my sister's son was faced with a tragic diagnosis of terminal mitochondrial disease. Our family has created a not-for-profit 501C3 as a result, and has raised over 300K for research. Peter and his entire family have been very generous with their love, prayers and support and with financial contributions for fundraising events as well.

I humbly ask your Honor that you have mercy on my cousin, not only for himself but for the benefit of the large family that has forgiven him and loves him unconditionally. We would all love to see him put his life back together as soon as possible to work for the education, success and happiness for his wife, children and grandchildren.

Very truly yours,

Maria Difolco



## *Most Rev. Dominick J. Lagonegro, D.D.*
**Auxiliary Bishop of the Roman Catholic Archdiocese of New York**
**Episcopal Vicar of the Northern Vicariates**
**of the Archdiocese of New York**

**Residence: 301 Ann Street**
**Newburgh, New York 12550**
**Rectory     845-561-2264**
**Fax          845-561-1112**

Honorable John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Your Honor:

I am the Most Rev. Dominick J. Lagonegro. I am an Auxiliary Bishop of the Archdiocese of New York.

I knew Peter and his family when he was a young boy growing up in Mamaroneck. Peter was a parishioner of St. Vito's parish where I was assigned as a priest from 1969 to 1977. Growing up he was a fine young man, truly caring about people, especially his parents and family. Over the years I have had some contact with Peter and his parents.

I have always known Peter to be a hard working person who truly cares about his family. I understand that he has been convicted of a crime. Any consideration you can show to Peter will be greatly appreciated.

Thank you for your consideration.

Sincerely yours,

Most Rev. Dominick J. Lagonegro