

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

February 15, 2012

VIA ECF AND HAND DELIVERY

The Honorable John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. Peter Pace, Jr.
           Criminal Docket No. 11-0026 (JG)

Dear Judge Gleeson:

      The government respectfully submits this letter in connection with the defendant Peter Pace's sentencing, which is scheduled for February 17, 2012, at 3:00 p.m.  On September 15, 2011, Pace pled guilty to Count Two of the above-referenced indictment, charging Hobbs Act extortion conspiracy, in violation of 18 U.S.C. § 1951(a).

      In his sentencing memorandum dated February 9, 2012, the defendant requests a sentence at the low end of the applicable Sentencing Guidelines range.  For the reasons set forth herein, the government respectfully submits that a term of incarceration within the Sentencing Guidelines range is appropriate based on the facts of this case.

I.    The Applicable Sentencing Guidelines Range

      As set forth in the Pre-Sentence Investigation Report ("PSR"), the Probation Department has determined that the defendant's total offense level is 17 and his Criminal History Category is II, resulting in an advisory Sentencing Guidelines range of 27 to 33 months.  (PSR ¶ 70).  The Probation Department's calculation includes a two-point enhancement for an implied threat of bodily injury.  (Id. ¶ 24).

      The government's plea agreement, by contrast, estimates the defendant's total offense level to be 14.  The government's calculation does not include an enhancement for the implied threat of bodily injury.  It does include a one-point "global" deduction to reflect the decision by Pace's co-defendants to

plead guilty and avoid the need for a trial. Accordingly, the government estimates the applicable Sentencing Guidelines range to be 18 to 24 months.

II. Section 3553(a) Factors

A. Nature and Circumstances of the Offense

The charges in this case stem from a long-term investigation involving a proactive cooperating witness, identified in the indictment as John Doe #1, who made consensual recordings of numerous organized crime members and associates over a period of close to four years. The defendant Pace is an associate of the Genovese crime family of La Cosa Nostra (the "Genovese family") who is assigned to the crew of longtime Genovese soldier Daniel Cilenti. His codefendants, Glenn Mazzella and Dominic Caramanica, are also associates in Cilenti's crew.

In or about 2002 – several years prior to John Doe #1's cooperation with the government, and prior to the extortions charged in this case – defendant Cilenti summoned John Doe #1 to a meeting with Cilenti, Pace, and Pace's father ("Pace Sr."). At that meeting, it was explained to John Doe #1 that Pace and Pace Sr. controlled the New York office of Danella Construction, a contractor that did extensive work for Con Edison, the New York area utility. Cilenti, Pace and Pace Sr. described a scheme whereby Pace and Pace Sr. would cause Danella to subcontract the demolition carting work on its Con Edison jobs to a company to be formed by John Doe #1 and a partner. John Doe #1 and his partner would be required to pay kickbacks of four percent of their profits to Cilenti and three percent to Pace and Pace Sr. The scheme was implemented at Cilenti's direction and continued for several years, until Pace left Danella in or about 2005.

In or about 2007, John Doe #1 was summoned to another meeting with Cilenti, Pace and another individual to discuss the formation of a new construction company, Qualcon, which would be managed by Pace and the other individual. The men agreed that John Doe #1 would handle trucking for Qualcon, in exchange for kickbacks to Cilenti and Pace. Between in or about May 2007 and February 2010, John Doe #1 handled trucking work for a variety of Qualcon construction projects, including the Aqueduct Racetrack, in Jamaica, Queens, and Public School 79, in the Bronx. On each of these projects, John Doe #1 was required to pay a kickback to Cilenti and Pace, leading to the extortion conspiracy charged as Count Two of the indictment, to which Pace pled guilty.

In or about the fall of 2009, Pace and John Doe #1 had a dispute over how much money John Doe #1 owed Pace and Cilenti for various projects John Doe #1 had worked on. Pace asked Mazzella to resolve the dispute. John Doe #1 understood that due to Cilenti's age and declining health, Mazzella was helping to handle Cilenti's mob-related business interests. Thereafter, at a meeting with Pace and Mazzella, Pace contended that John Doe #1 owed him $5,000. Following Mazzella's intervention, the men agreed that John Doe #1 would kick back $3,000 as an "acknowledgement" for the past work, and three-quarters of a percentage point of revenues on all future projects with Pace.

In addition to John Doe #1, Pace, Mazzella, Cilenti and their co-defendant, Caramanica, also conspired to extort another individual, identified in the indictment as John Doe #2, who was involved in a business dispute with Pace and who owed John Doe #1 a legitimate business debt.

B.  History and Characteristics of the Defendant

The defendant is, as noted, an associate of the Genovese family in the crew of his co-defendant, Daniel Cilenti.

The defendant has a long history of involvement in acts of violence. As set forth more fully in the government's Pretrial Memorandum dated August 26, 2011 (Docket Entry 72), during a consensually recorded conversation with John Doe #1, Pace boasted about assaulting his mother-in-law. On another occasion, after Pace's vehicle had been vandalized, John Doe #1 observed Pace remove an aluminum baseball bat from the trunk of his car and confront an individual whom Pace believed to have been involved in the vandalism. Finally, as set forth in the PSR, the defendant was convicted after a trial and sentenced to 54 months in prison in 1993 for assaulting another patron at a bar in Pelham, New York.

C.  The Need for the Sentence Imposed

Although this case involved no outright acts of violence, it exemplifies some of the ways in which members of organized crime have entangled themselves in the construction industry in New York City, and use their position to extract illegal kickbacks from participants in that industry, simply as a cost of doing business. The facts of this case – including the defendant's role as an associate in the Genovese family, the nature and circumstances of the charged crime, and the defendant's role in that crime – all weigh in favor of a sentence within the applicable Sentencing Guidelines range.

III. Conclusion

      For the foregoing reasons, the government respectfully requests that the Court impose a sentence within the applicable Sentencing Guidelines range.

                                    Respectfully submitted,

                                    LORETTA E. LYNCH
                                    United States Attorney

                         By:   /s/ Stephen E. Frank
                                    Stephen E. Frank
                                    Assistant U.S. Attorney
                                    (718) 254-6143

cc:  Joseph R. Benfante, Esq. (by email and ECF)